**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wilfredo CEJAS, Jr.,
Defendant-Appellant.**

No. 85–1144.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 1985.

Decided May 18, 1987.

John D. Lyons, Jr., Phoenix, Ariz. for plaintiff-appellee.

Denis H. Mark and William C. Waller, Denver, Colo., for defendant-appellant.

Before BROWNING, SNEED and HUG, Circuit Judges.

HUG, Circuit Judge:

Appellant Cejas appeals from the denial of his motions to dismiss the indictment returned against him in the District of Arizona. Cejas contends that this indictment is barred by the double jeopardy clause of the Fifth Amendment, by the doctrines of *res judicata* and collateral estoppel, and under the provisions of the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C.App. § 1 *et seq.* (1982).

This case principally involves the assertion of a double jeopardy defense, and the application of the doctrines of *res judicata* and collateral estoppel in a criminal case. Cejas contends that the Government is barred from proceeding on the present indictment, which is based on an alleged drug conspiracy, because he contends a prior conviction was based upon the same drug conspiracy. An additional wrinkle is advanced in this case: Cejas contends that the question of whether the present indictment is barred by double jeopardy was finally determined in a prior proceeding; and, thus, the doctrine of collateral estoppel precludes the relitigation of that issue.

## I.

### JURISDICTION

As a general rule, denials of pretrial motions are not considered final and are, therefore, not appealable. *United States v. Garner*, 632 F.2d 758, 760 (9th Cir.1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). An exception to this general rule has been recognized in the case of a denial of a pretrial motion to dismiss based on a claim of double jeopardy. *Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977); *United States v. Ajimura*, 598 F.2d 510, 512 (9th Cir.1979). Under *Abney*, the district court's order denying Cejas's motion to dismiss the indictment on double jeopardy grounds is appealable as a final order under 28 U.S.C. § 1291 (1982). The bar to a second prosecution based on collateral estoppel is a principle "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson*, 397 U.S.

436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Thus, an order denying a motion to bar retrial based on collateral estoppel—being a double jeopardy determination—is also appealable under the rationale of *Abney*. *See United States v. Stearns*, 707 F.2d 391, 394 (9th Cir.1983), *aff'g* 546 F.Supp. 805 (D.Hawaii 1982), *cert. denied*, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 181 (1984).

Cejas argues that the court also has jurisdiction to review the denial of his motion to dismiss for violation of the IAD. *Abney* precludes this; the court does not have ancillary jurisdiction to review otherwise nonappealable questions that are raised simultaneously with the double jeopardy claim. *United States v. Sisk*, 629 F.2d 1174, 1181 (6th Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). To hold otherwise would encourage frivolous double jeopardy claims in circumvention of the finality requirement of section 1291. *Abney*, 431 U.S. at 662–63, 97 S.Ct. at 2041–42. Thus, we lack jurisdiction to consider Cejas's appeal from the denial of his motion to dismiss for violations of IAD.

## II.

### FACTS

On April 17, 1984, Cejas was indicted, along with 38 other individuals, in the proceeding entitled *United States v. Harold Jerry Garmany, et al.*, CR–84–090–PHX–WPC. The *Garmany* Indictment charged 77 counts and listed hundreds of overt acts involving an organization that allegedly imported, obtained, and distributed a variety of drugs. The principal count, Count Three, charged a conspiracy to distribute marijuana, cocaine, and methaqualone, and use of a communication facility to facilitate the same, in violation of 21 U.S.C. § 846 (1982), and sets forth 265 overt acts, among which were overt actions 72, 73, 80, and 89, relating to drug transactions at Sneed's Ferry, North Carolina, and Fort Pierce, Florida, during February and March of 1981.

Cejas was named in Count Three, as well as Count Four (conspiracy to import marijuana and cocaine in violation of 21 U.S.C. § 952 (1982 & Supp. III)), Count Five (conspiracy to violate 18 U.S.C. § 1962(c) (1982) (Racketeer Influenced and Corrupt Organizations) ("RICO")), Count Seven (conspiracy to defraud the IRS in violation of 18 U.S.C. § 371 (1982)), Count Twenty-seven (conspiracy in the use of extortionist means to collect extension of credit in violation of 18 U.S.C. § 894(a)(1) (1982)), and Count Forty-one (interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. §§ 2 (1982) and 1952 (1982)).

Subsequently, it was learned that Cejas had been convicted on charges of conspiracy involving the Sneed's Ferry-Fort Pierce transactions on April 11, 1982 in the Southern District of Florida ("Florida conviction"). Count One of the Florida conviction charged Cejas with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846; Count Two charged him with use of a communication facility in facilitating a conspiracy to distribute marijuana in violation of 21 U.S.C. § 843(b) (1982).

Cejas moved for dismissal of Count Three of the *Garmany* Indictment on double jeopardy grounds, arguing that the conspiracy charged in Count Three was the same conspiracy for which he was convicted in Florida. In opposing this motion, the Government conceded that overt acts 72, 73, 80, and 89 of Count Three of the *Garmany* Indictment were the same acts that formed the basis of the Florida conviction. The Government suggested, however, that the *Garmany* Indictment could be purged of this taint by merely excising those overt acts.

Cejas also moved for dismissal of the remaining counts against him in the *Garmany* Indictment on the ground that each count depended on the conspiracy charged under Count Three and, as that count was barred by double jeopardy, the district court should exercise its supervisory powers and order the remaining counts dismissed. On January 28, 1985, the district court dismissed all counts against Cejas "on the grounds of double jeopardy and the

*[United States v.] Guido* [597 F.2d 194 (9th Cir.1979)] and *[United States v.] Allen* [539 F.Supp. 296 (C.D.Cal.1982)] cases as stated." The Government did not seek reconsideration of, and did not appeal from, the district court's dismissal.

On February 20, 1985, Cejas was indicted on two counts in the present case, which we designate as the *Cejas* Indictment. Count One of the *Cejas* Indictment charges conspiracy to distribute marijuana and cocaine in violation of 21 U.S.C. § 846; Count Two charges conspiracy to violate 18 U.S.C. § 1962(c) (RICO) in violation of 18 U.S.C. § 1962(d). The *Cejas* Indictment was issued by a different grand jury than the one that handed down the *Garmany* Indictment. Both counts involve three basic transactions: (1) in New Orleans, 10,000 pounds of marijuana was sold to the Garmany organization by Cejas through Letitia Serpas ("Serpas") and Rex Ryland ("Ryland") in January of 1981; (2) near Raleigh, North Carolina, a DC-4 load of 9,000 pounds of marijuana, which was arranged and carried out by Cejas, Serpas, Ryland, and Harold Lee Baumann; and (3) in Augusta, Georgia, the distribution of 2,000 pounds of marijuana to Cejas from the Garmany organization in late June or early July of 1981. On the Government's motion, the matter was consolidated with the proceedings in *Garmany*.

Cejas filed the motions to dismiss, based on the double jeopardy clause of the Fifth Amendment and the doctrines of *res judicata* and collateral estoppel. The Government opposed the motions, and the district court denied them without a hearing. Cejas timely filed his notice of appeal.

## III.

### DISMISSAL OF GARMANY INDICTMENT

We consider first the effect of the district court's dismissal of Cejas from the *Garmany* Indictment. Cejas, relying upon *United States v. Ajimura*, 598 F.2d 510 (9th Cir.1979), contends that this dismissal was a final decision on the merits, which was not appealed by the Government, and,

thus, became *res judicata* and precluded the Government from proceeding further against Cejas on that indictment. The Government did not proceed further against Cejas on the *Garmany* Indictment, but obtained the new *Cejas* Indictment. Cejas contends that the Government is precluded from prosecuting him under the new *Cejas* Indictment on the grounds of collateral estoppel because that indictment charges the same offenses as were dismissed on the merits from the *Garmany* Indictment. Cejas argues that the Government, having been precluded from prosecuting Cejas under the *Garmany* Indictment by *res judicata*, cannot avoid this result by simply obtaining a new indictment.

■ The doctrines of *res judicata* and collateral estoppel apply to criminal, as well as civil, proceedings. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Sealfon v. United States*, 332 U.S. 575, 578, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948); *United States v. Adams*, 281 U.S. 202, 205 (1930); *United States v. Oppenheimer*, 242 U.S. 85, 87, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916); *United States v. Stearns*, 707 F.2d 391, 394 (9th Cir.1983), *cert. denied*, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 181 (1984); *United States v. Powell*, 632 F.2d 754, 757 (9th Cir.1980); *United States v. Dipp*, 581 F.2d 1323, 1325 (9th Cir.1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979); *United States v. Venable*, 585 F.2d 71, 75 (3d Cir. 1978); *United States v. Pappas*, 445 F.2d 1194, 1197 (3d Cir.), *cert. denied, sub nom. Mischlich v. United States*, 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971). In most instances, the application of either doctrine has been after a jury verdict. Here, we are concerned with the effect of the dismissal of an indictment, and the issue is whether that was a final decision on the merits that bars further prosecution. The Government argues that the dismissal of Cejas from the *Garmany* Indictment was simply a procedural ruling, not a decision on the merits and, thus, could have no *res judicata* or collateral estoppel effects.

Rule 12 of the Federal Rules of Criminal Procedure replaced the archaic procedural forms of raising defenses, but made no change in substance in the underlying defenses and objections that may be raised. 8 Moore's Federal Practice § 12–02(1) p. 12–15 (2d Ed. 1984). Thus, a ruling on a motion to dismiss under Rule 12 will have different effects depending upon the nature of the defense raised. The granting of a motion to dismiss based upon double jeopardy, which would have been raised by a "plea in bar," would have the effect of putting an end to all further prosecution. *Id.* at 12–16.

■ It has also been recognized that collateral estoppel could be raised as a pretrial defense to an indictment, which would bar further prosecution. Thus, the dismissal of an indictment on the ground that further prosecution is barred by double jeopardy can preclude trial on a reindictment for the same charge.

The first Supreme Court case applying collateral estoppel to criminal law involved this very issue, *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). In that case, the defendant had moved the district court to quash an indictment because it was barred by a one-year statute of limitations in the Bankruptcy Act. The motion was treated as a "plea in bar," and was granted. Subsequent to that decision, the Supreme Court, in another similar case, held that the statute of limitations in the Bankruptcy Act did not apply. The defendant was reindicted for the same offense. Justice Holmes's statements in *Oppenheimer* are pertinent here:

Upon the merits the proposition of the Government is that the doctrine of *res judicata* does not exist for criminal cases except in the modified form of the Fifth Amendment that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere state-

ment of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.... We do not suppose that it would be doubted that a judgment upon a demurrer to the merits would be a bar to a second indictment in the same words....

Of course the quashing of a bad indictment is no bar to a prosecution upon a good one, but a judgment for the defendant upon the ground that the prosecution is barred goes to his liability as matter of substantive law and one judgment that he is free as matter of substantive law is as good as another. A plea of the statute of limitations is a plea to the merits, ... and however the issue was raised in the former case, after a judgment upon it, it could not be reopened in a later prosecution.

*Id.* at 87–88, 37 S.Ct. 68–69 (citations omitted).

The issue we confront is whether the district judge's dismissal of Cejas from the *Garmany* Indictment was a ruling on the merits, thus barring further prosecution on the same charge. The dialogue between counsel and the district judge reveals the basis for the district judge's decision. Defense counsel argued that the prosecution had consistently taken the position that the *Garmany* Indictment alleged one conspiracy. The defense argued that Cejas has been convicted of that conspiracy, for which he received a six-year sentence, and that the double jeopardy clause precluded his being charged again with that same conspiracy.

The prosecution contended it could simply eliminate the overt acts that involved the Florida conviction and eliminate any double jeopardy problem. The district court, however, correctly observed a more basic problem: if the conspiracy involved in the Florida conviction was the same as the one charged in the *Garmany* Indictment, the double jeopardy clause precluded proceeding on the *Garmany* Indictment against Cejas regardless of whether men-

tion of those overt acts was eliminated. The prosecution persisted with the assertion that there was one overall conspiracy including the one involved in the Florida conviction. The dialogue between the district judge and the prosecutor, Mr. Schwartz, was as follows:

THE COURT: Well, let me ask you this: Practically every defendant in this case who has filed a motion—and I think that's all but two or three of them that have been apprehended—have all filed a motion to dismiss Count 3, particularly as being multiple conspiracies.

MR. SCHWARTZ: That is correct.

THE COURT: You have stood adamantly upon the fact that you are going to prove that Count 3 is one conspiracy.

Now, you put 265 overt acts in Count 3, upon which everything else is based. Presumably you presented evidence to the grand jury in support of Count 3 of every overt act that is listed, and now you are telling me that some six or seven of those overt acts really proved a different conspiracy; therefore, we should leave them out and then just go ahead with the rest of them.

MR. SCHWARTZ: May I respond? It's not our position that we are changing at all; it's not a separate conspiracy; we are still taking the position that it is a single conspiracy.

THE COURT: All right. If it is a single conspiracy and those overt acts prove it, he has already pled guilty to it.

MR. SCHWARTZ: Well, if I may, the position that the defendant is taking is that if a defendant in a multiple transaction conspiracy is convicted of one of those conspiracies prior—one of those transactions prior to the Government filing its—

THE COURT: But what you are using are the same overt acts to prove two separate conspiracies. Otherwise, you wouldn't be redacting those six or seven; you would be standing on them.

MR. SCHWARTZ: We want to redact those separate transactions.

THE COURT: That's right, because they prove a different conspiracy.

MR. SCHWARTZ: They prove a conspiracy—excuse me. They prove a part of the transactions that is part of one—one conspiracy.

THE COURT: Go ahead, Mr. Schwartz.

MR. SCHWARTZ: Well, I guess the Court is not impressed with what I'm saying.

The point I am trying to get at is ... if the defendant is found and arrested for a transaction which is part of an overall, large conspiracy and the Government is not aware of it at that time, what you want—take the position is that once he is found guilty of that separate transaction, then any other transaction that he committed with similar coconspirators would be vitiated.

THE COURT: I'm not talking about a substantive act; I'm talking about a plea of guilty to a conspiracy.

MR. SCHWARTZ: Yes, okay. His charge in Florida went for a specific period of time from the time of January to sometime in the spring.

THE COURT: Are you saying that that, then, is an entirely separate and distinct conspiracy with different conspirators rather than the fact that he simply joined an ongoing conspiracy for six months or whatever it was?

MR. SCHWARTZ: No, I would not say that at all, because that was part of the entire, overall conspiracy to provide marijuana to—

THE COURT: Which conspiracy, the one he pled guilty to or the one he is charged with here?

MR. SCHWARTZ: The one he's charged with here was the—in our count, Count 3, was an overall conspiracy to provide marijuana to the Garmany organization and it started prior to the Florida transaction which we have alleged.

THE COURT: Why do you use those same overt acts to prove your conspiracy when they have already been used to establish a separate conspiracy? Otherwise, it's double jeopardy.

MR. SCHWARTZ: It was in error. The Government should not have put those overt acts in.

THE COURT: I think you live with your error. You put those before the grand jury and the grand jury relied on those to prove this conspiracy, and if you are wrong, you eat it.

. . . .

THE COURT: ... The indictment as to defendant Cejas is dismissed as to Counts 3, 4, 5, 7, 27, and 41 on the grounds of double jeopardy and the *Guido* and *Allen* cases, as stated.

. . . .

■ The Government contends that the district court was simply dismissing a defective indictment. However, the statements of the trial judge pointedly dismiss the indictment because it charges the same conspiracy for which Cejas was convicted in Florida. This was a final decision on the merits. If the district judge had ruled against Cejas, he could have appealed under *Abney*. The district judge ruled for Cejas, and the Government could have, but did not, appeal this ruling under 18 U.S.C. § 3731 (Supp.III). Consequently, the decision became the final order as though it had been affirmed on appeal and was *res judicata* as to any further proceedings against Cejas on that indictment. Under the ruling of the district court, it is clear that the Government could not have merely excised the overlapping overt acts from the indictment and proceeded with that indictment against Cejas. The district judge specifically rejected that suggestion.

The issue then is whether the Government could avoid that ruling by obtaining a new indictment for the same conspiracy.

■ Normally, the dismissal of an indictment has no preclusive effect on further proceedings because the usual reason is faulty procedure or technical defects in the wording of the indictment that can be cured by reindictment. A dismissal of an indictment on the merits, however, precludes a trial on a reindictment for the same charge.

## IV.

### CEJAS INDICTMENT

 Our inquiry is whether the *Cejas* Indictment charges the same conspiracy as charged in the *Garmany* Indictment, from which Cejas was dismissed, and, thus, is precluded by the doctrine of collateral estoppel. The Government has virtually admitted that the conspiracy charged in the *Cejas* Indictment is the same as that charged in the *Garmany* Indictment. In its motion to transfer and to consolidate the case brought under the *Cejas* Indictment with the case against all of the remaining defendants under the *Garmany* Indictment, the Government filed a memorandum in support of that motion. The memorandum stated:

> The drug transactions which are the basis for the two counts against Cejas in the new indictment, CR–85–0046 are the same drug transactions which provide the basis for the charges against other defendants in the earlier indictment, CR–84–090. (Not included in the new indictment are the drug transactions which created the double jeopardy problem in the dismissal on January 29, 1985.)

The prosecution seemed to be under the erroneous impression that it could continue to prosecute for the same conspiracy if it merely excised the overt acts that overlapped with the Florida conviction, contrary to the ruling of the district court, provided it simply brought a new indictment. The point, however, was that Cejas was dismissed from the *Garmany* Indictment because it charged the same conspiracy that was the basis of the Florida conviction. The district court dismissed Cejas from the conspiracy count and the RICO count of the *Garmany* Indictment. The dismissal on these charges was on the merits. Collateral estoppel precludes trying the defendant for the same charges under a new indictment.

The prosecutor's memorandum went on to point out that the six overt acts in Count One of the *Cejas* Indictment were also alleged in the *Garmany* Indictment, and that two of the four overt acts alleged in Count Two (the RICO count) of the *Cejas* Indict-

ment were the same as those alleged in the *Garmany* Indictment. This serves to confirm the conclusion that the conspiracies alleged are the same.

The holding of the district judge, in dismissing Cejas from the *Garmany* Indictment because it involved the same criminal conspiracy for which he was convicted in Florida, was a ruling on the merits and barred further prosecution for that conspiracy. The *Cejas* Indictment was based on the same conspiracy and, thus, the Government is barred from proceeding on that indictment. The motion to dismiss the indictment shoutd be granted. We therefore reverse and remand for entry of an order dismissing the *Cejas* Indictment.

REVERSED and REMANDED.