STATE of Alaska, Appellant,

v.

Boyce WILLIAMS, Jr., Appellee.

No. A–4324.

Court of Appeals of Alaska.

July 16, 1993.

Rehearing Denied July 29, 1993.

---

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Charles E. Cole, Atty. Gen., Juneau, for appellant.

Myron Angstman, Law Office of Myron Angstman, Bethel and Walter Share, Seattle, WA, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

### *OPINION*

BRYNER, Chief Judge.

The state appeals an order entered by Superior Court Judge Dale O. Curda dismissing, on grounds of collateral estoppel and *res judicata*,[1] an indictment charging Boyce Williams, Jr. with sexual assault in the second degree and sexual abuse of a minor in the second and third degrees. The substantive claim the state seeks to raise—the sufficiency of the evidence presented before the grand jury that indicted Williams—is relatively straightforward. Nevertheless, Williams interposes a procedural issue that necessitates a review of the decidedly less straightforward procedural history of this case.

### FACTS AND PROCEDURAL HISTORY

#### 1. Facts

The charges against Williams arose from two incidents that occurred during April and May of 1991 in the village of Kwethluk, where Williams taught high school.

---

**1.** Judge Curda's order of dismissal, the parties' pleadings below, their briefs on appeal, and the various authorities cited therein, refer alternatively to collateral estoppel and *res judicata*. In the context of the present case, any distinction between these two doctrines is immaterial; for the sake of simplicity, we refer hereinafter only to collateral estoppel.

The incidents involved two boys, fifteen-year-old A.A. and fourteen-year-old R.M.

During the spring of 1991, A.A. lived in Bethel and attended school there. The previous year, however, he had lived in Kwethluk; Williams had been his teacher. In mid-May of 1991, A.A. visited Kwethluk for several days. After returning to Bethel, he reported that Williams had assaulted him during the visit.

According to A.A., he and another boy went to Williams' residence in Kwethluk to watch a video. Williams asked A.A. to come into the bedroom, saying that he (Williams) needed to do something about detentions that A.A. had received at school in Bethel. Once in the bedroom, Williams wrestled A.A. down, forced A.A.'s pants and underpants off, and spanked A.A., striking the boy's buttocks with his hand. During the spanking, Williams touched A.A.'s testicles; as he did so, he asked if A.A. was "getting a hard-on." A.A. eventually managed to push Williams away.

When interviewed by a trooper, Williams admitted spanking A.A., claiming that he had done it as a form of discipline, to make A.A. a better student.[2] Williams claimed that he did not recall touching A.A.'s testicles but acknowledged that the touching might have occurred accidentally during the spanking. During a subsequent, surreptitiously monitored telephone conversation with A.A., however, when A.A. mentioned that Williams had asked if A.A. was "getting a hard-on", Williams responded: "Yes, I did say that, and that was really stupid of me to say. I'm very sorry that I said that." Williams also said he wished that A.A. had come to him before contacting the troopers.

While investigating A.A.'s report, the troopers learned of a similar incident involving R.M., who was a resident of Kwethluk and an eighth-grade student of Williams. According to R.M., in mid-April of 1991, Williams accosted R.M. as R.M. came out of the school shower, naked; Williams grabbed R.M.'s chest and testi-cles, pulled the boy down over his knee, and spanked him. Williams said nothing to R.M. to explain or justify this conduct. R.M. later reported the incident to his brother-in-law.

Williams was reinterviewed by a trooper in connection with R.M.'s report and admitted spanking R.M. Williams also admitted grabbing R.M.'s testicles, telling the trooper that this was just a—sort of a move that he [Williams] had, that he would use in an effort to control somebody, that he grabbed him with one hand by his testicles, other hand by his chest, and just put him on his lap and administered a spanking.

### 2. Procedural History

On May 31, 1991, after hearing testimony from A.A., R.M., and the trooper who had interviewed Williams, a grand jury in Bethel indicted Williams for three counts of sexual abuse of a minor in the second degree, three counts of sexual assault in the second degree, and three counts of assault in the fourth degree.

Three of the nine counts related to the bedroom spanking incident involving A.A.: for touching A.A.'s testicles, Williams was charged with one count of second-degree sexual abuse of a minor (engaging in sexual contact with a person under 16 years of age over whom Williams occupied a position of authority in violation of AS 11.41.-436(a)(5)(B), and, alternatively, with one count of second-degree sexual assault (engaging in nonconsensual sexual contact in violation of AS 11.41.420(a)(1)); in addition, Williams was charged with one count of fourth-degree assault for spanking A.A. (recklessly causing physical injury to A.A. in violation of AS 11.41.230(a)(1)).

For the shower room spanking of R.M., Williams was charged with three similar counts—second-degree sexual abuse of a minor, second-degree sexual assault, and fourth-degree assault. In addition, apparently due to a miscommunication, the state mistakenly believed that R.M. had been the

**2.** Williams also admitted that he had spanked other boys. Although he declined to name anyone, he stated that he would be willing to admit or deny individual spankings if asked about specific people.

victim of another, similar spanking incident in Williams' office. The three remaining counts of the indictment addressed the purported office spanking, paralleling the charges that dealt with the bedroom and shower-room incidents.

Williams moved to dismiss all of the charges. Among various other grounds, he alleged that the evidence presented to the grand jury was insufficient to establish: 1) that sexual contact had occurred, for purposes of the sexual assault and sexual abuse charges; 2) that Williams occupied a position of authority over A.A., for purposes of the second-degree sexual abuse charge that stemmed from the bedroom spanking incident of A.A.; 3) that physical injury had occurred, for purposes of the fourth-degree assault charges; and 4) that any offenses at all had occurred with R.M. in the alleged office incident.

Judge Curda agreed with Williams' claims of insufficient evidence; in addition, the judge concluded that Williams' grand jury hearing had been tainted by hearsay and inadmissible evidence of other bad acts. For these reasons, Judge Curda ordered Williams' indictment dismissed.

The state elected not to appeal the order of dismissal. Instead, it re-presented Williams' case to the grand jury and secured a second indictment. The indictment contained three counts dealing with the bedroom spanking incident involving A.A. For the touching of A.A.'s testicles, the indictment alternatively alleged: one count of sexual abuse of a minor in the third degree (for having sexual contact with A.A. when A.A. was 13, 14, or 15 years of age in violation of AS 11.41.438(a)(1)), and one count of sexual assault in the second degree (for nonconsensual sexual contact); a third count alleged fourth-degree assault for A.A.'s spanking (recklessly causing physical injury to A.A.).

The indictment also contained four counts dealing with the shower room spanking incident involving R.M.: for the touching of R.M.'s testicles, the indictment alternatively alleged one count of sexual abuse of a minor in the second degree (for engaging in sexual contact with R.M. when R.M. was under sixteen years of age and when Williams occupied a position of authority over him), one count of sexual assault in the second degree (for nonconsensual sexual contact), and one count of sexual abuse of a minor in the third degree (for having sexual contact with R.M. when R.M. was 13, 14, or 15 years of age); the remaining count alleged fourth-degree assault for R.M.'s spanking.

Shortly after the issuance of the new indictment, the state filed a notice of dismissal as to the two charges of fourth-degree assault, leaving Williams with five counts: two alternative counts relating to the touching of A.A.'s testicles and three relating to the touching of R.M.'s testicles.

As reconfigured, the new charges avoided many of the pitfalls the trial court had found in dismissing the first indictment. By dropping all charges relating to the office spanking of R.M., which had never occurred, the new indictment resolved the problems of hearsay and prior-misconduct evidence that Judge Curda had originally found, as well as the problem of insufficient evidence relating to the office spanking incident. Furthermore, by replacing the original charge of second-degree sexual abuse of a minor relating to A.A. (which had been based on the theory that Williams occupied a position of authority over A.A.) with a lesser charge of sexual abuse of a minor in the third degree (which required no evidence of Williams' authority over A.A.), the new indictment addressed the trial court's finding that there was insufficient evidence of Williams' authority over A.A., who was no longer a pupil of Williams' when the alleged abuse occurred. Finally, by dismissing the fourth-degree assault charges, the state rendered moot Judge Curda's original finding that insufficient evidence of physical injury had been presented.

The reconfigured charges nevertheless failed to resolve one remaining aspect of Judge Curda's original dismissal order: all remaining charges against Williams were based on the theory that Williams' touching of A.A.'s and R.M.'s testicles amounted to sexual contact. The evidence presented to

the second grand jury in support of these charges was substantially similar to the evidence presented to the first grand jury; yet Judge Curda's original order of dismissal had, in part, been based on the conclusion that the evidence presented to the first grand jury was insufficient to establish that Williams' touchings amounted to sexual contact.

Williams moved to dismiss the second indictment. He asserted, in relevant part, that, because the evidence presented to the first and second grand juries on the issue of sexual contact was essentially identical, and because the state had failed to appeal the court's ruling that insufficient evidence of sexual contact had been presented, relitigation of this issue was barred by the doctrine of collateral estoppel.

After confirming that basically the same evidence of sexual contact had been presented to the first and second grand juries, Judge Curda adopted Williams' view, concluding that collateral estoppel precluded the state from reopening the question of whether sufficient evidence of sexual contact had been presented. Relying exclusively on the original finding of insufficient evidence, the judge ordered the second indictment dismissed.

The state evidently believed that a direct appeal of the second dismissal order was foreclosed because the order was based on collateral estoppel rather than on the sufficiency of the evidence before the second grand jury. *See Kott v. State*, 678 P.2d 386, 388–89 & n. 4 (Alaska 1984). Accordingly, the state filed with this court a "petition for review, or in the alternative, motion to accept late notice of appeal." In its petition, the state requested discretionary review by this court of Judge Curda's application of the collateral estoppel doctrine, or, alternatively, leave to file an untimely direct appeal from the original order dismissing Williams' first indictment for insufficient evidence. The state argued that its failure to file a timely appeal from the original order of dismissal resulted from its good faith efforts to resolve the evidentiary problems that led to dismissal of the original indictment.

We construed the state's petition as a motion for this court to determine whether this matter should be treated as a petition for review or as an appeal, and we ordered Williams to file a response on that issue. In his response, Williams argued that the sole issue properly presented by Judge Curda's second order of dismissal was the correctness of the judge's reliance on collateral estoppel. In Williams' view, the judge's reliance on that doctrine was legally sound, thereby rendering the sufficiency of the evidence before the second grand jury immune from appellate review, since that issue had been conclusively determined by Judge Curda's order dismissing the first indictment. Williams further asserted that the state's tactical decision to forego a direct appeal of the first dismissal order should preclude its belated efforts to file an untimely appeal.

After considering the state's petition and Williams' response, this court issued an order holding that the state was entitled to appeal Judge Curda's dismissal of the second indictment. In relevant part, we said:

> Although both parties focus considerable attention on the question of whether Judge Curda properly applied collateral estoppel and res judicata in this case, we find it unnecessary to resolve the issue. Technically speaking, Judge Curda's decision to dismiss the second indictment without reexamining the merits of the state's legal claims might more readily be justified as an application of the law of the case doctrine, *see, e.g., Wolff v. Arctic Bowl*, 560 P.2d 361 [758] (Alaska 1978), than as an application of res judicata or collateral estoppel principles. Res judicata and collateral estoppel apply only when a party raises issues or claims that are "precisely the same as" issues or claims decided in prior litigation. *Briggs v. State*, 732 P.2d 1078, 1081 (Alaska 1981 [1987]). Here, the issue involved in the motion to dismiss the second indictment was the sufficiency of the evidence presented by the state at the *second* grand jury hearing; this is arguably not precisely the same issue as that adjudicated in the original order of

dismissal—the sufficiency of the evidence presented before the *first* grand jury.

Whatever formal label might be attached to the underlying rationale for Judge Curda's January 31 dismissal order, however, it appears that, in substance, the order amounted to a determination that the evidence supporting the second indictment was insufficient for the same reasons as the first. Because the January 31 order was in substance a determination of the sufficiency of the evidence before the second grand jury, we conclude that it qualifies as an appealable order under AS 22.07.020(d) and Appellate Rule 202(c), the pertinent portions of which allow the state appeal in a criminal case "to test the sufficiency of the indictment...." *See Kott v. State,* 678 P.2d 386, 388–89 & n. 4 (Alaska 1984).

## DISCUSSION

In its briefs on appeal, the state argues that the evidence before the grand jury was sufficient to support the charges against Williams. Williams, in contrast, adheres to the position that Judge Curda properly applied the collateral estoppel doctrine in dismissing the second indictment; he claims that Judge Curda's reliance on collateral estoppel forecloses substantive review of the sufficiency of the evidence presented to the second grand jury. Williams urges this court to uphold Judge Curda on the collateral estoppel issue and to go no further. Alternatively, Williams maintains that the evidence presented to the second grand jury was insufficient to establish sexual contact.[3]

### 1. Collateral Estoppel

■ We first consider Williams' claim that collateral estoppel bars review of the

sufficiency of the evidence presented to the second grand jury. It is well settled that the collateral estoppel doctrine applies to criminal cases in Alaska. *Briggs v. State,* 732 P.2d 1078, 1081–82 (Alaska 1987); *DeSacia v. State,* 469 P.2d 369, 379–80 (Alaska 1970); *Boyles v. State,* 647 P.2d 1113, 1116 (Alaska App.1982). The doctrine precludes relitigation of an issue that has been decided in previous litigation. However, as the Alaska Supreme Court made clear in *Briggs,* three prerequisites must be met before the doctrine attaches: first, the issue decided in the prior litigation must have been precisely the same as that presented in the current litigation. Second, the prior litigation must have resulted in a final judgment resolving the merits of the issue; and third, there must be "mutuality" between the parties involved in the prior and current actions. 732 P.2d at 1081.

■ In the present case, the superior court invoked collateral estoppel as a basis for declining to consider the sufficiency of the evidence presented to Williams' second grand jury. Given the three prerequisites set forth in *Briggs,* we conclude that the superior court's invocation of collateral estoppel was improper. Specifically, we hold that the order dismissing the first indictment did not constitute a final judgment resolving, on its merits, the question of the sufficiency of the evidence against Williams before the second grand jury.

In dismissing the second indictment, Judge Curda reasoned that, because the evidence of sexual contact presented to Williams' second grand jury was essentially the same as that presented to the first— which the judge had already deemed legally insufficient to support a finding of sexual contact between Williams and A.A. or

---

**3.** Both the state and Williams also devote considerable effort to argument on the issue of whether sufficient evidence was presented to establish physical injury, a necessary element of the fourth-degree assault charges that were initially included in the second indictment. Since the state dismissed the fourth-degree assault charges shortly after the second indictment was issued, and since physical injury is not a neces-

sary element of any of the charges that remained pending when Judge Curda dismissed the second indictment, the issue of physical injury now seems moot. It is not clear to us why the parties have persisted in arguing the physical injury issue, unless, perhaps, it is by oversight. In any event, as matters currently stand, we see no need to address it.

R.M.—collateral estoppel barred reconsideration of the point. Implicit in this reasoning is the judge's recognition that a second indictment for the same offenses would not have been barred had the state presented more or different evidence on the issue of sexual contact.

■ The accuracy of this tacit recognition can hardly be doubted, for the state's right to seek reindictment upon dismissal of an initial indictment for insufficient evidence has never been seriously questioned and has been uniformly upheld. *See, e.g., Taggard v. State*, 500 P.2d 238, 244 (Alaska 1972).[4] At the same time, however, the court's recognition that the state would not have been barred from obtaining a reindictment on more or better evidence—and the court's concomitant belief that collateral estoppel applied to Williams' case only because of the similarity of evidence presented to the first and second grand juries—reveals a fundamental flaw with the court's theory of the collateral estoppel doctrine.

■ Collateral estoppel deals with relitigation of legal issues, not re-introduction of similar evidence. The doctrine bars relitigation of a previously decided issue regardless of what evidence the party seeking to relitigate the issue is prepared to present. Once a legal issue has been finally decided on its merits, a party cannot circumvent collateral estoppel's bar to relitigation merely by presenting more or better evidence; to the contrary, a primary purpose of collateral estoppel is to preclude successive attempts to produce more evidence on an issue that has already been decided.

It follows that, if the doctrine truly applied to a dismissal order based on insufficient grand jury evidence, it would necessarily bar the state from seeking reindictment for the same offense, no matter how much better or stronger the government's evidence might be upon seeking reindictment. In other words, the doctrine would perform the same role at the grand jury level that the double jeopardy clause performs at the trial level. Yet, if so applied, the collateral estoppel doctrine would run squarely counter to the prevailing rule, which, as we have already noted (and as Judge Curda implicitly recognized), leaves the state free to seek reindictment following a dismissal for insufficient evidence.

In short, the prevailing rule allowing reindictment is itself fundamentally incompatible with the notion that a dismissal order based on insufficient evidence can collaterally estop the state from attempting to reindict. This incompatibility, in turn, suggests the conclusion that an order dismissing an indictment simply does not constitute "a final judgment on the merits" resolving the issue of the sufficiency of evidence to support a prosecution. *Briggs v. State*, 732 P.2d at 1081.

Indeed, Williams cites no case, and we are aware of none, in which an order of dismissal based on the factual insufficiency of evidence before a particular grand jury has been construed to be a final judgment resolving, on its merits, the issue of the sufficiency of evidence against the accused. Williams nevertheless offers two cases for the conclusion that collateral estoppel should bar reindictment under the circumstances of his case. The two cases are *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), and *United States v. Cejas*, 817 F.2d 595 (9th Cir.1987). Upon careful scrutiny, however, both cases support the conclusion that collateral estoppel is inapplicable here.

In *Oppenheimer*, the United States Supreme Court upheld a trial court's reliance on collateral estoppel to dismiss the second indictment of a defendant whose original indictment had been dismissed for violation of the statute of limitations. In dismissing the original indictment, the trial court had relied on the statute of limitations in the Bankruptcy Act. The government did not appeal. Shortly thereafter, the United States Supreme Court, in an unrelated but

---

4. In contrast to the rule that applies when the court dismisses an indictment that has already been issued, if the grand jury itself determines that insufficient evidence has been presented and, on that basis, issues a no true bill, then the state is barred from seeking to reindict unless it applies for and secures the approval of the superior court. *See* AS 12.40.080.

similar case, found the Bankruptcy Act's statute of limitations inapplicable. This led the government to reindict Oppenheimer.

The trial court dismissed the second indictment, finding prosecution barred by collateral estoppel, notwithstanding the intervening Supreme Court ruling on the Bankruptcy Act's statute of limitations. The government appealed, arguing that collateral estoppel was inapplicable in criminal cases.

In upholding the trial court's use of collateral estoppel, Justice Holmes wrote:

> Upon the merits the proposition of the government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment ...; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled; or that it is conclusive if entered upon the general issue, but if upon a special plea of the statute, permits the defendant to be prosecuted again.

*United States v. Oppenheimer,* 242 U.S. at 87, 37 S.Ct. at 69 (citation omitted).

As a careful reading of this passage from *Oppenheimer* will reveal, the Court deemed it of crucial significance that the original dismissal had amounted to "a decision upon a plea in bar," resulting in the entry of "a judgment of acquittal on the ground of the statute of limitations." *Id.*

Under the forms of pleading in effect when *Oppenheimer* was decided, a plea in bar was one that "would have the effect of putting an end to all further prosecution." *United States v. Cejas,* 817 F.2d at 598.[5] As is also apparent from the passage of *Oppenheimer* quoted above, the granting of a plea in bar in favor of a defendant resulted in the entry of a judgment of acquittal on the merits.

It was undisputed in *Oppenheimer* that a motion to dismiss based on the statute of limitations amounted to a plea in bar. Justice Holmes' opinion makes it clear beyond dispute that collateral estoppel barred further prosecution in the case not merely because the first indictment had been dismissed, but rather because the dismissal had stemmed from a plea in bar, which had resulted in the entry of a judgment of acquittal on the merits:

> Of course, the quashing of a bad indictment is no bar to a prosecution upon a good one, but a judgment for the defendant upon the ground that the prosecution is barred goes to his liability as a matter of substantive law, and one judgment that he is free as a matter of substantive law is as good as another. A plea of the statute of limitations is a plea to the merits, and however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution.

*United States v. Oppenheimer,* 242 U.S. at 87, 37 S.Ct. at 69 (citation omitted).

The second case offered by Williams, *United States v. Cejas,* simply follows *Oppenheimer's* lead in an even more obvious procedural context. Cejas was indicted on a federal conspiracy charge in Arizona. The indictment alleged a complex, multistate conspiracy, charged numerous other defendants, and recited 265 overt acts committed in furtherance of the conspiracy.

Cejas moved to dismiss on grounds of double jeopardy, claiming that he had previously been convicted of a federal conspiracy charge in Florida that involved the

---

**5.** *See also* Black's Law Dictionary 1037 (4th ed. 1979), which defines "plea in bar" as: "A plea which goes to *bar* the plaintiff's action; that is, to defeat it absolutely and entirely."

same conspiracy alleged in the Arizona indictment. In support of his claim, Cejas pointed out that several of the overt acts charged in the Arizona indictment overlapped overt acts that had been charged in the Florida case for which he had been convicted.

After finding that the Arizona indictment and the earlier Florida indictment involved the same conspiracy, the trial court granted Cejas' motion and dismissed the case, concluding that further prosecution was barred by double jeopardy.

Instead of appealing, the government reindicted Cejas in Arizona for the same conspiracy, but amended the indictment to delete the overt acts that had been included in his original Florida indictment. Cejas again moved to dismiss. In response, the government argued, and apparently convinced a new judge, that the Arizona indictment did not involve the same conspiracy as the Florida conspiracy for which Cejas had already been convicted. The trial court denied Cejas' motion to dismiss.

Cejas appealed, contending that the argument the government prevailed on before the trial court—that the Florida and Arizona indictments involved different conspiracies—was barred by collateral estoppel, since the issue had already been decided by the judge who dismissed his initial Arizona indictment on double jeopardy grounds. *Cejas,* 817 F.2d at 596–97.

The court of appeals in *Cejas,* relying in large part on *Oppenheimer,* reversed the trial court's denial of Cejas' motion to dismiss the second Arizona indictment, finding that collateral estoppel barred relitigation of the double jeopardy claim that led to the dismissal of Cejas' initial Arizona indictment. In relevant part, the court stated:

[A] ruling on a motion to dismiss under [Federal Criminal] Rule 12 will have different effects depending upon the nature of the defense raised. The granting of a motion to dismiss based upon double jeopardy, which would [under old forms of pleading] have been raised by a "plea in bar," would have the effect of putting an end to all further prosecution.

It has ... been recognized that collateral estoppel could be raised as a pretrial defense to an indictment, which would bar further prosecution. Thus, the dismissal of an indictment on the ground that further prosecution is barred by double jeopardy can preclude trial on a reindictment for the same charge.

*Cejas,* 817 F.2d at 598 (citation omitted).

In sharp contrast to *Oppenheimer* and *Cejas,* Williams' original indictment was dismissed on grounds that did not bar reindictment. The original order of dismissal addressed, in relevant part, the sufficiency of the evidence presented to the first grand jury. A dismissal motion based on this ground is not tantamount to a "plea in bar" such as a violation of the statute of limitations or a claim of double jeopardy which would preclude all further prosecution; to the contrary, as we have already indicated, reindictment following a dismissal for insufficient evidence has traditionally been allowed.

Similarly, the original order dismissing Williams' indictment did not "go[ ] to his liability as [a] matter of substantive law," *Oppenheimer,* 242 U.S. at 87, 37 S.Ct. at 69; it did not amount to a "judgment that he is free as [a] matter of substantive law," *id.;* nor did it in any way place Williams in the position of "a man once ... acquitted on the merits." *Id.,* 242 U.S. at 88, 37 S.Ct. at 69.

For this reason, we hold that the original order of dismissal in this case did not amount to "a final judgment on the merits," *Briggs v. State,* 732 P.2d at 1081, for purposes of the collateral estoppel doctrine, and we conclude that the superior court erred in relying on collateral estoppel to order Williams' second indictment dismissed.[6]

---

**6.** We do not mean to suggest that the state was entitled to receive, or that the superior court was required to give, plenary reconsideration to the issues it had already decided in the context of the first indictment. As we indicated in our

order of April 13, 1992, Judge Curda's decision to dismiss the second indictment without fully reexamining the merits of the state's legal claims might have been justified as an application of the law of the case doctrine. *Cf. Wolff v.*

### 2. Sufficiency of Evidence Before the Grand Jury

We turn next to the sufficiency of the evidence presented to the second grand jury on the issue of sexual contact.[7] The grand jury is empowered to indict when all of the evidence taken together, if unexplained or uncontradicted, would warrant a conviction. Alaska Criminal Rule 6(q); *Lupro v. State*, 603 P.2d 468, 473 (Alaska 1979); *Newsom v. State*, 533 P.2d 904, 906 (Alaska 1975). In challenges to the sufficiency of the evidence before a grand jury, every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment. *State v. Ison*, 744 P.2d 416, 418 (Alaska App.1987). The evidence is sufficient if, viewed in this manner, "it is adequate to persuade reasonable minded persons that if unexplained or uncontradicted it would warrant a conviction of the person charged with an offense by the judge or jury trying the offense." *State v. Parks*, 437 P.2d 642, 644 (Alaska 1968) (footnote omitted).

When Williams' second indictment was dismissed, five charges remained, each based on the allegation that Williams had unlawfully engaged in sexual contact by touching either A.A.'s or R.M.'s testicles. Of the various grounds Judge Curda had relied on in dismissing the original indictment, only one remained pertinent when he dismissed the second indictment: that

"[t]here was not sufficient evidence of sexual contact or sexual intent" to support the charges.

"Sexual contact" is defined in AS 11.81.-900(b)(53)(A)(i) (formerly AS 11.81.-900(b)(52)(A)(i)), to include "knowingly touching ... the victim's genitals". The same statute specifies, however, that sexual contact "does not include acts that may reasonably be construed to be normal caretaker responsibilities for a child, interactions with a child, or affection for a child; or [acts] performed for the purpose of administering a recognized and lawful form of treatment...." AS 11.81.900(b)(53)(B)(i) & (ii).

Both A.A. and R.M. testified before the second grand jury that Williams touched their testicles. Although neither child stated specifically that the touching was knowing, rather than accidental, reasonable minded persons, viewing the totality of the evidence in the light most favorable to the state, could certainly draw this conclusion.

Williams' claim that the evidence did not establish sexual arousal or gratification on his part is beside the point, since "specific intent is no longer an element of sexual abuse of a minor." *Boggess v. State*, 783 P.2d 1173, 1177 (Alaska App. 1989). *See also Van Meter v. State*, 743 P.2d 385, 389–91 (Alaska App.1987).

*Arctic Bowl*, 560 P.2d 758 (Alaska 1977). As Williams recognizes, however, the distinction between collateral estoppel and law of the case has procedural significance. As an application of the law of the case doctrine—which is a rule of judicial convenience rather than a rule of law, *id.* at 763 n. 5,—the dismissal order would technically amount to a determination of the insufficiency of the second indictment, allowing the state a direct appeal on the issue of insufficiency. If the order were based on a proper application of the collateral estoppel doctrine— a rule of law rather than a rule of judicial convenience—the dismissal would technically have been entered without litigating the issue of sufficiency, and the sufficiency of the evidence presented to the second grand jury would thus not properly be open to appellate review.

7. Since the superior court did not purport to rule on the sufficiency of the evidence before the second grand jury, we could conceivably

decline to address the issue, remanding this case to the trial court to decide it in the first instance. However, before ordering the second indictment dismissed, Judge Curda determined that the evidence on the issue of sexual contact was substantially identical to evidence that was presented to the first grand jury. The parties do not dispute his finding, and our own examination of the grand jury transcripts establishes that it is accurate. Since Judge Curda has already ruled that the evidence presented to the first grand jury was insufficient, he would obviously be likely to reach the same conclusion with respect to the sufficiency of evidence presented to the second grand jury. Under the circumstances, remanding the case would amount to little more than a hollow gesture. Since sufficiency of the evidence is primarily a question of law, rather than a question of fact, and since both parties have addressed the substantive issue in their briefs, we believe it best to address it at this juncture.

It is conceivable, of course, as Williams argues, that a jury considering the evidence after Williams has been afforded an opportunity to explain or contradict the charges at trial might find a reasonable doubt as to whether the alleged touchings occurred accidentally or amounted to acts within the scope of normal caretaker functions. Unexplained and uncontradicted, however, and viewed in the light most favorable to the state, the grand jury evidence would permit reasonable jurors to find that Williams had knowingly touched A.A.'s and R.M.'s testicles, and that these touchings were unrelated to any normal caretaker function he was authorized to perform.

Nothing more was required for the grand jury evidence to be sufficient to establish "sexual contact" as defined in AS 11.81.900(b)(53). Since sufficient evidence was presented to Williams' second grand jury to support the disputed charges, we conclude that the superior court erred in ordering Williams' second indictment dismissed.[8]

### CONCLUSION

For the foregoing reasons, the order of dismissal is REVERSED.

---

**8.** Williams has additionally argued that we should uphold Judge Curda's dismissal order on the ground that the charges are vague and overbroad, as well as for violation of the speedy trial rule. *See* Alaska Criminal Rule 45. Neither of these issues, however, falls within the scope of the state's appeal. Moreover, Williams never raised the speedy trial issue below; and although Williams did raise the issue of vagueness and overbreadth in his motion to dismiss the first indictment, Judge Curda did not decide it, and Williams did not reassert the issue in moving to dismiss the second indictment. Under the circumstances, we find that neither issue is ripe for decision here.