**UNITED STATES of America,
Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

No. CR 05–07–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

June 8, 2006.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction[1]

Defendant Harry Eschenbach has filed a motion on behalf of all Defendants to dismiss or limit Count I of the Indictment because the knowing endangerment object is barred by the statute of limitations. The Defendants argue that the Indictment does not allege any overt acts done in furtherance of the knowing endangerment object within the five-year statute of limitations. The United States opposes the motion as untimely and argues on the merits that the post–1999 acts of concealment alleged in the Indictment are acts done in furtherance of both the defrauding object and the knowing endangerment object of the conspiracy. In this case the Defen-

---

1. The facts of this case are well known to the Court and the parties and will not be recited here except where necessary.

dants have the better argument. As a consequence, the knowing endangerment allegation of the conspiracy count will be dismissed for the reasons set forth below.

## II. Background

Count I of the Indictment charges:

71. That beginning on or about 1976, and continuing until on or about 2002, at Libby, and other locations within and without the District of Montana, the defendants, W.R. GRACE, ALAN R. STRINGER, HENRY A. ESCHEN-BACH, JACK W. WOLTER, WILLIAM J. McCAIG, ROBERT J. BETTACCHI, O. MARIO FAVORITO, and ROBERT C. WALSH, and others known and unknown to the grand jury did knowingly combine, conspire and agree among themselves and others:

### OBJECTS OF THE CONSPIRACY

a. To knowingly release and cause to be released into the ambient air a hazardous air pollutant, namely asbestos, and at the time knowingly placed persons, including: families of employees of W.R. GRACE Libby vermiculite mining and processing operations; residents of Libby, Montana and surrounding communities in Lincoln County; and others in imminent danger of death or serious bodily injury in violation of 42 U.S.C. § 7413(c)(5)(A).

b. To defraud the United States and others by impairing, impeding, and frustrating the governmental functions of the United States, including the United States Environmental Protection Agency (EPA) and the Department of Health and Human Services, specifically, the National Institute for Occupational Safety and Health ("NIOSH"); being federal agencies responsible for administering federal laws and regulations designed to protect public health and safety and the environment in violation of 18 U.S.C. § 371.

72. It was a purpose of the conspiracy to conceal and misrepresent the hazardous nature of the tremolite asbestos contaminated vermiculite, thereby enriching defendants and others.

73. It was a purpose of the conspiracy to increase profits and avoid liability by misleading the government and preventing the government from using its authorities to protect against risks to human health and the environment associated with the manufacture, processing, distribution, commerce, use, handling, disposal, and release of tremolite asbestos contaminated vermiculite.

### MANNER AND MEANS OF THE CONSPIRACY

The following manner and means, among others, were used by the defendants to effectuate and perpetuate the conspiracy set forth above:

74. It was part of the conspiracy that the defendants obtained knowledge of the hazardous nature of the tremolite asbestos contaminated vermiculite through various means, including, but not limited to: scientific testing and analysis, including animal studies; epidemiological studies of employees; employee medical screening and examinations; employee medical record reviews; collection and evaluation of a deceased employee's lung tissue; review of employee death certificates; conducting employee morbidity and mortality studies; employee autopsy reviews; review of medical and scientific literature; reviewing reports from insurance carriers; and reviewing employee worker's compensation claims.

75. It was part of the conspiracy that the defendants obtained knowledge of the propensity of tremolite asbestos con-

taminated vermiculite, when disturbed, to release fibers into the ambient air (also known as "friability") through various means, including, but not limited to: product testing, including attic simulation and vermiculite materials handling tests ("drop tests"); and air and bulk sampling at the Libby Mine and other defendant W.R. GRACE facilities in and around Libby, Montana, at defendant W.R. GRACE owned and licensed expansion plants, at the facilities of customers using vermiculite materials, and at the Libby High School track.

76. It was part of the conspiracy that the defendants concealed the full extent of their knowledge of the hazardous nature and friability of the tremolite asbestos contaminated vermiculite from employees of defendant W.R. GRACE Libby vermiculite mining and processing operations; families of employees of defendant W.R. GRACE Libby vermiculite mining and processing operations; industrial customers of defendant W.R. GRACE Libby vermiculite products; employees of industrial customers of defendant W.R. GRACE Libby vermiculite products; residents of Libby, Montana and surrounding communities in Lincoln County, Montana; and government authorities.

77. It was part of the conspiracy that the defendants obstructed, impeded, and frustrated the governmental authorities by withholding information regarding the hazardous nature and friability of the tremolite asbestos contaminated vermiculite and asserting that the Libby Mine operations and Libby vermiculite posed no risk to public health and safety and the environment.

\* \* \*

79. It was part of the conspiracy that the defendants sold and leased tremolite asbestos contaminated real property and withheld information about the contamination from the purchasers of the property.

80. It was part of the conspiracy that defendants provided and distributed tremolite asbestos contaminated vermiculite material to the community, resulting in releases of asbestos into the ambient air in and around Libby, Montana and surrounding communities in Lincoln County, Montana.

\* \* \*

82. It was part of the conspiracy that the defendants falsely described, concealed from, and failed to reveal to the government the hazardous nature and friability of the tremolite asbestos in the Libby vermiculite and the health hazards associated with exposure to tremolite asbestos.

83. It was part of the conspiracy that the defendants obstructed, impaired, impeded, and misled EPA during the course of EPA's emergency response to the asbestos contamination in and around Libby, Montana.

## III. Analysis

### A. Timeliness

Rule 12(c), Fed.R.Crim.P. states, "The court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing." Rule 12(e) states, "A party waives any Rule 12(b)(3)[2] defense, objection, or re-

2. Rule 12(b)(3), Fed.R.Crim.P. requires that motions alleging a defect in the indictment, other than motions claiming lack of jurisdiction, must be raised before trial. A statute of limitations defense is not jurisdictional, *United States v. Akmakjian,* 647 F.2d 12, 14 (9th Cir.1981), and is therefore within the scope of Rule 12(b)(3).

quest not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver."

The Scheduling Order in this case set December 15, 2005 as the deadline for motions challenging the facial insufficiency of the charges. The Defendants filed several motions to dismiss in compliance with that deadline, including motions predicated on the statute of limitations. This motion was filed over three months late, on March 20, 2006. Not only does the filing fail to comply with the December 15, 2005 deadline for motions based on statutes of limitation, but it comes nearly three weeks after the March 1, 2006 deadline for all pretrial motions other than motions in limine. The Defendants explain the delay by stating that the Court's March 3, 2006 Order on the Defendants' motions to dismiss "exposed a critical defect in the Indictment." Defs' Br. at 2. The defect that the Defendants say this Court "exposed" is that "the government has not alleged a single overt act in furtherance of the endangerment prong of the alleged conspiracy within the limitations period." *Id.*

The government counters by observing that the instant motion relies on a theory that is an extension of earlier arguments raised by the Defendants in their motions to dismiss. The government's argument is persuasive. In the March 3, 2006 Order, the Court agreed with the Defendants that knowing endangerment under the Clean Air Act is not a continuing offense. This is an argument that the Defendants made in their motion to dismiss filed December 15, 2005 (Doc. No. 251). The alleged defect cited by the Defendants is the Indictment's failure to allege within the limitation period an overt act in furtherance of the know-

ing endangerment object; if the Defendants are correct that this is a flaw in the Indictment, it is one that existed on the day this case was filed. The Court's March 3, 2006 Order did not create a legal predicate for the motion where none existed before.

At the hearing on the motion counsel for the Defendants suggested that it would have been inappropriate to bring this motion to dismiss before the Court had decided their motion to dismiss the Clean Air Act counts. I do not share the Defendants' view; there would have been nothing at all improper in bringing this motion along with the Defendants' other motions to dismiss. Moreover, given the Defendants' willingness throughout this case to promptly bring legal issues to the Court's attention, or as the Defendants have put it, to "race into court,"[3] I am not convinced that considerations of propriety were behind their failure to comply with the Scheduling Order. The Defendants' untimely filing is due to their failure to identify and raise the issue earlier.

■ By failing to bring their motion in accordance with the Scheduling Order, the Defendants have waived their statute of limitations argument under the Federal Rules of Criminal Procedure. The Defendants neglected to seek an extension of the deadline or request leave to file an untimely motion. The question remains whether good cause exists for granting relief from the waiver. I find that it does. This case could reasonably have been tried on a much more abbreviated schedule than the one established in the March 15, 2005 Scheduling Order. The longer schedule was designed to allow for the inevitable delays that accompany a case of this size

---

3. *See* Defendants' Joint Reply in Support of Their Motion For Limited Stay Pending Appeal, or, in the Alternative, For Implementation of the Court's December 5 Order Pre- cluding the Government's Expert Witnesses From Relying on Previously Undisclosed Data (Doc. No. 389) at p. 5.

while preserving a trial date upon which the parties and the Court could rely in their planning. The Court's decision to figure delays into the pretrial scheduling process has proven to be a sound one, as the government has throughout much of the case been a step slow in complying with its discovery obligations. Given that the deadlines set forth in the Scheduling Order have been as often honored in the breach as in the observance, and that in each case thus far it has been the government who has failed to comply and the Defendants who have been inconvenienced, fairness dictates that the Defendants be allowed this dilatory filing. The Defendants are accordingly relieved from the waiver, and the Court will consider the motion on its merits.[4]

## B. Statute of Limitations

The Defendants move to dismiss the knowing endangerment object of the Count I conspiracy as time-barred under the five-year statute of limitations.[5] They rely primarily on *Yates v. U.S.*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), *overruled on other grounds, Burks v. United States*, 437 U.S. 1, 2, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), in which the Supreme Court held that where the government has charged a conspiracy with more than one object, the statute of limitations must be satisfied independently as to each. In *Yates*, the defendants were convicted a single conspiracy consisting of two objects: one to organize a society intended to encourage the violent overthrow of the federal government, and another to advocate

the violent overthrow of the federal government. 354 U.S. at 300, 77 S.Ct. 1064.[6] The Supreme Court reversed the conviction due to its conclusion that the object of organizing a seditious society, in this case the Communist Party, had been completed outside the limitations period. Ongoing party activities that continued into the limitations period, such as recruiting new members and forming new units, were held not to have been undertaken in furtherance of the organizational object, but rather solely for the purpose of advancing the advocacy objective. The Court reversed the jury's general verdict of guilt on the conspiracy count because it was unclear whether the overt act upon which the jury agreed related to the advocacy object or the time-barred organizational object. *Id.* at 311–312, 77 S.Ct. 1064.

▪ The Defendants here contend that the knowing endangerment object is time-barred because the Indictment does not allege an act in furtherance of that object within the limitations period, which this Court has previously determined stretches back to November 3, 1999. *See United States v. Grace*, 429 F.Supp.2d 1207, 2006 WL 1211162, *36 (D.Mont.2006). The government disagrees, arguing that *Yates* is distinguishable from this case and that every overt act alleged in the Indictment is alleged to have been done in furtherance of both objects of the Count I conspiracy.

There is no basis for holding the rule of *Yates* inapplicable here. The prosecution attempts to do so by relying on this

---

4. This is not to suggest that compliance with the Scheduling Order is optional. To date, the failures to timely comply with the trial schedule have not jeopardized the trial date. Given the proximity to the start of trial, any future failures to adhere to deadlines will be problematic for the offending party.

5. Because the conspiracy statute does not contain its own statute of limitations, the of-

fense carries the five-year statute of limitations generally applicable to non-capital federal criminal offenses. *See* 18 U.S.C. § 3282(a).

6. Organizing and advocating were separate offenses under the Smith Act. 354 U.S. at 302 n. 1, 77 S.Ct. 1064.

Court's ruling on the Defendants' motion to dismiss Counts II through IV (the substantive knowing endangerment counts) as time-barred, in which the Court dismissed the charges in those counts pertaining to criminal acts completed before November 3, 1999, but ordered that "the case will proceed to trial on what remains of Counts II through IV." *Grace,* at 1246, 2006 WL 1211162, *34. The government argues that the Court's refusal to dismiss the knowing endangerment counts entirely must mean that certain knowing endangerment offenses were not complete until after November 3, 1999. Because the Indictment alleges releases within the limitation period, the prosecution argues, there is no statute of limitation problem.

The flaw in the government's argument is that it overlooks the apparent nature of the government's theory on the substantive knowing endangerment counts. The Indictment does not allege any specific "release" of hazardous air pollutants after November 3, 1999. Instead, as the Defendants have stated, the government's theory appears to be that "some of the defendants 'caused' releases within the limitations period by placing contaminated vermiculite in locations where innocent third parties would later unknowingly release tremolite fibers into the ambient air." Defs' Br. at 8. But while that theory may be viable and may therefore bring certain completed substantive knowing endangerment offenses within the limitations period, it does not transfer to the conspiracy charge. Conspiracy requires an overt act within the limitations period, which is not the same as a completed substantive offense within the limitations period. An overt act is any act done by a conspirator to effect the object of the conspiracy. 18 U.S.C. § 371. Under the government's theory, a knowing endangerment offense could have been completed within the limitations period in the absence of any contemporaneous overt act by a conspirator. Accordingly, the Court's finding that under the government's theory the Indictment alleges completed substantive knowing endangerment offenses occurring within the limitations period does not mean that it also alleges an overt act in furtherance of the conspiracy to commit knowing endangerment within the limitations period.

Because *Yates* controls, the allegations in the Indictment conspiracy count should be dismissed unless it alleges an overt act in furtherance of the knowing endangerment object within the limitations period. The government says the requisite allegations can be found in the following paragraphs of the Indictment:[7]

143. From on or about 1981 and continuing through 2000, defendant W.R. GRACE failed to completely remove vermiculite materials contaminated with tremolite asbestos from the Plummer Elementary School ice skating rink.

149. From on or about 1981 and continuing through 2000, defendants W.R. GRACE, McCAIG, WOLTER, and STRINGER failed to completely remove vermiculite materials contaminated with tremolite asbestos from the Libby Junior and Senior High School tracks.

7. The paragraphs of the Indictment listed in this Order are those that are identified specifically by the government in its response. The government continues to argue that each overt act alleged in the Indictment is alleged to have been done in furtherance of both objects of the conspiracy. As they say, "that dog don't hunt." The argument does not work for several reasons, the most obvious of which is that the criminal Clean Air Act provision upon which the knowing endangerment charge is based was not enacted until 1990, long after dozens of the alleged overt acts in furtherance of the conspiracy had already occurred. *See* Clean Air Act Amendments of 1990, Pub.L. 101–549, 104 Stat. 2672.

173. On or about November 23, 1999, defendants W.R. GRACE and STRINGER told the EPA On–Scene Coordinator that Libby Mine vermiculite concentrate at the Export Plant and at the Screening Plant contained less than one percent tremolite asbestos.

174. On or about November 23, 1999, defendants W.R. GRACE and STRINGER told the EPA On–Scene Coordinator that historical asbestos contamination problems at the Libby Mine had been resolved and provided one page of air monitoring data gathered during closure of the mine site to demonstrate that current conditions were safe.

175. From on or about November 23, 1999 through approximately spring of 2000, defendants W.R. GRACE and STRINGER led EPA employees and contractors associated with EPA's Superfund cleanup, to various locations that were contaminated with tremolite asbestos, including: the "Mine Site," "Rainy Creek Road," the "Screening Plant," the "Flyway" and the "Export Plant," without disclosing the extent and nature of the contamination at these locations.

176. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA104(e) Request For Information regarding the "Libby Asbestos Site" and provided the following false and misleading information: that defendant W.R. GRACE did not provide vermiculite contaminated with tremolite asbestos to the general public in Libby.

177. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA 104(e) Request For Information regarding the "Libby Asbestos Site" and failed to inform EPA that defendant W.R. GRACE had donated vermiculite mill coarse tailings contaminated with tremolite asbestos to Libby public schools for surfacing the Junior High School running track.

178. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA 104(e) Request For Information regarding the "Libby Asbestos Site" and failed to inform EPA that defendant W.R. GRACE had donated vermiculite mill coarse tailings contaminated with tremolite asbestos to the Libby Public School District for the foundation of the Plummer Elementary School outdoor ice skating rink.

179. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA 104(e) Request For Information regarding the "Libby Asbestos Site" and failed to disclose that defendant W.R. GRACE used waste materials contaminated with tremolite asbestos to "sand" Rainy Creek Road.

180. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA 104(e) Request For Information regarding the "Libby Asbestos Site" and failed to disclose all locations where asbestos contaminated vermiculite materials were located, including: the "Flyway" and the "Bluffs."

181. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA 104(e) Request For Information regarding the "Libby Asbestos Site" and provided the following false and misleading information: that defendant W.R. GRACE employees did not regularly leave the facility with dust contaminated with tremolite asbestos on their clothing.

182. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA 104(e) Request For Information regard-

ing the "Libby Asbestos Site" and failed to disclose all air and environmental media sampling information.

183. On or about February 22, 2000, defendants W.R. GRACE and STRINGER responded to an EPA CERCLA 104(e) Request For Information regarding the "Libby Asbestos Site" and failed to disclose the existence and dispositions of the following waste streams, among others: "Stoner Rock" and waste vermiculite concentrate.

184. On or about April 10, 2002, in response to a proposal by EPA to declare a "public health emergency" for the City of Libby that would allow EPA to remove asbestos containing attic insulation from homes in Libby, defendant W.R. GRACE, in a letter to the Administrator of EPA, stated the following:

(i) "Grace's expanded vermiculite, which was used in ZAI, poses no risk to human health or the environment;"

(ii) ". . . [ZAI] contains biologically insignificant amounts of respirable asbestos fibers;"

(iii) ". . . it is reasonable to expect that disturbance of [ZAI] will not result in hazardous levels of airborne asbestos fibers;" and

(iv) ". . . there is no credible reason to believe that ZAI has ever caused an asbestos-related disease in anyone who has used in his/her home."

Paragraphs 143 and 149 do not bring the knowing endangerment object within the statute of limitations because they do not allege overt acts. The failure of the Defendants over twenty years to take steps to fully remediate the grounds of Libby public schools is not an overt act done to effect an object of the conspiracy as required by 18 U.S.C. § 371. "Though the result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one...." *United States v. Walker*, 653 F.2d 1343, 1347 (9th Cir.1981)

(quoting *Fiswick v. United States*, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946)). The purpose of the overt act requirement is "to manifest that the conspiracy is at work, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." *Yates*, 354 U.S. at 334, 77 S.Ct. 1064. The failure to fully abate the schoolyard contamination more plausibly suggests a completed operation than a conspiracy still at work.

Paragraphs 173, 174, and 176–184 allege a series of false and misleading statements made during the course of the EPA's investigation and clean-up in Libby. These paragraphs unquestionably allege concealment of the extent of the contamination in Libby in furtherance of the defrauding object of the Count I conspiracy. The question is whether that concealment is also alleged to have been undertaken in part for purposes of advancing the knowing endangerment object. The government argues in the affirmative, stating, "[I]t can be fairly read that all of these overt acts served the same purpose: to limit the defendants' liability through obstruction of EPA's functions and causing/concealing the ongoing endangerment posed to the townspeople of Libby and Lincoln County." Govt.'s Br. at 7.

The Defendants correctly point out that the inclusion of the word "causing" in the quoted sentence makes little sense. The government concedes that the overt acts serve the purpose of limiting the Defendants' liability, but attempts to save the point by inserting a reference to causing ongoing endangerment. But it is not clear how causing further endangerment limits the Defendants' liability. The paragraphs at issue fall under a subheading of the Indictment's "OVERT ACTS" section titled "Obstruction of EPA's Superfund Clean–Up," and obstruction is precisely

what the paragraphs allege. It is true that one effect of the obstruction was to prolong the alleged ongoing risk of exposure to tremolite, but the mere fact that an act will result in continued danger does not mean the act was done with the purpose of prolonging the danger.

An overt act is an act done "for the purpose of carrying out the conspiracy." Ninth Circuit Model Criminal Instruction 8.16 (2003). Taken in the context of the Indictment as a whole, the acts alleged in Paragraphs 173, 174, and 176–184 were done for the purpose of concealing the Defendants' wrongdoing and limiting their liability (the defrauding object), and had the ancillary effect of continuing the danger posed by the contamination in Libby (the knowing endangerment object). Accordingly, the paragraphs in question cannot be construed as alleging acts in furtherance of the knowing endangerment object.

The lone remaining allegation, contained in Paragraph 175, poses a more difficult question. That paragraph alleges that Defendants Grace and Stringer led EPA officials and others to contaminated cites in and around Libby without disclosing the nature of the contamination. The Defendants are alleged to have been aware of the toxicity and friability of tremolite, and are alleged to have known of its presence at each of the sites visited in Paragraph 175. It is therefore possible to conclude that by bringing unknowing individuals onto the properties in question, the Defendants are alleged to have knowingly brought about a scenario whereby endangerment could occur under the government's theory. Nonetheless, under an objective reading of Paragraph 175, and taking into account the other paragraphs included under the "Obstruction of EPA's Superfund Clean–Up" subheading, it is more plausible that the acts alleged were

done in furtherance of the defrauding object. The crux of the allegation in Paragraph 175 is the failure to be fully truthful with the authorities. A fair reading of the Indictment compels the conclusion that the point of the alleged wrongful conduct in that paragraph was not to endanger EPA officials, but rather to mislead them. Although the acts alleged in Paragraph 175 may have resulted in prolonged endangerment, I cannot conclude that the paragraph alleges acts done in furtherance of the knowing endangerment object when the language and context of the paragraph so clearly suggest another purpose.

Because the government has failed to allege an overt act in furtherance of the knowing endangerment object within the limitations period, *Yates* requires that the knowing endangerment object of the Count I conspiracy be dismissed as time-barred.

### IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that the Defendants' motion to dismiss or limit Count I (Doc. No. 351) is GRANTED and the knowing endangerment object of Count I (Indictment ¶ 71(a)) is DISMISSED WITH PREJUDICE as time-barred under the statute of limitations.