UNITED STATES of America, Plaintiff,

v.

W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.

No. CR 05–07–M–DWM.

United States District Court, D. Montana, Missoula Division.

July 27, 2006.

**1114**

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich, Dale, Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough, Shanahan, Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell, Gray, Stepp & Lafitte, Columbia, SC, William A. Coates, Roe, Cassidy, Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

### ORDER

MOLLOY, Chief Judge.

### I. Introduction[1]

The Defendants have filed a motion to dismiss the knowing endangerment object

---

1. The facts of this case are well known to the Court and the parties and will not be recited here except where necessary.

of Count I of the Superseding Indictment. The Defendants contend that the Superseding Indictment does not cure the defect found in the original Indictment. Based on this premise the argument is put forth that the Superseding Indictment is therefore invalid under the Court's analysis in its June 8, 2006 Order. That Order dismissed the knowing endangerment object of the Count I conspiracy in the original Indictment. Defendants also argue that re-prosecution of the knowing endangerment object of the Count I conspiracy is barred because that object was dismissed with prejudice by the earlier order. Although they do not expressly raise the point in their briefing, the Defendants offered the statute of limitations as an additional basis for dismissal during oral argument. The government contends that the use of the "with prejudice" language does not bar re-prosecution and further argues that 18 U.S.C. § 3288 allows a six-month window in which the government may re-allege the knowing endangerment object, regardless of whether the statute of limitations has run. The government is correct about the significance of the "with prejudice" language but its view of the nostrum of amendment is at odds with the statute of limitations. The remedy of a superseding indictment does not work with the facts of this particular case.

## II. Background

The Court granted the Defendants' motion to dismiss the Clean Air Act knowing endangerment object of the Count I conspiracy in this case on June 8, 2006.[2] In my Order, I stated, "the knowing endangerment object of Count I (Indictment ¶ 71(a)) is DISMISSED WITH PREJUDICE as time-barred under the statute of limitations." *United States v. W.R. Grace*, 434 F.Supp.2d 879, 888 (D.Mont.2006). The government then obtained a Superseding Indictment a bit over two weeks later on June 26, 2006 (Doc. No. 590). The Superseding Indictment contains relatively few changes. This motion involves the alterations to Paragraphs 173–183. These paragraphs, and in particular Paragraph 175, were the focus of the June 8 analysis in deciding whether the original Indictment had alleged an act in furtherance of the knowing endangerment prong of the conspiracy charge within the limitations period.[3] The paragraphs as pled in the

2. Count I alleges that it was an object of the conspiracy

> To knowingly release and cause to be released into the ambient air a hazardous air pollutant, namely asbestos, and at the time knowingly placed persons, including: families of employees of W.R. GRACE Libby vermiculite mining and processing operations; residents of Libby, Montana and surrounding communities in Lincoln County; and others in imminent danger of death or serious bodily injury in violation of 42 U.S.C. § 7413(c)(5)(A).

Indictment at ¶ 71(a).

3. The June 8, 2006 Order states:

> The lone remaining allegation, contained in Paragraph 175, poses a more difficult question. That paragraph alleges that Defendants Grace and Stringer led EPA officials and others to contaminated cites in and around Libby without disclosing the nature of the contamination. The

Defendants are alleged to have been aware of the toxicity and friability of tremolite, and are alleged to have known of its presence at each of the sites visited in Paragraph 175. It is therefore possible to conclude that by bringing unknowing individuals onto the properties in question, the Defendants are alleged to have knowingly brought about a scenario whereby endangerment could occur under the government's theory. Nonetheless, under an objective reading of Paragraph 175, and taking into account the other paragraphs included under the "Obstruction of EPA's Superfund Clean–Up" subheading, it is more plausible that the acts alleged were done in furtherance of the defrauding object. The crux of the allegation in Paragraph 175 is the failure to be fully truthful with the authorities. A fair reading of the Indictment compels the conclusion that the point of the alleged wrongful conduct in that paragraph was not to endanger EPA officials, but rather to mislead

original Indictment described acts of *concealment* but did not allege acts of *endangerment*.

The pending motion challenges the substance of the new allegations. The changes in the Superseding Indictment try to recast Paragraphs 173–183 as descriptions of acts in furtherance of both the defrauding object and the knowing endangerment object alleged in the Count I conspiracy. Toward this end the Superseding Indictment contains an amended heading for the section of the charging document in which Paragraphs 173–183 appear. In the original Indictment that section was headed "Obstruction of EPA's Superfund Clean–Up." The corresponding section in the Superseding Indictment is headed "Knowing Endangerment of EPA Employees and the Libby Community and Obstruction of EPA's Superfund Clean–Up." The alterations to Paragraphs 173, 174, 176–180, 182 and 183 are uniform.[4] In each case the Superseding Indictment offers the same factual allegation as alleged in the corresponding paragraph of the original Indictment, followed by the new phrase, "thereby concealing the true hazardous nature of the asbestos contamination, delaying EPA's investigation and causing releases of asbestos into the air in the Libby community."[5]

Paragraph 175 is amended in a manner different from the others. In the original Indictment Paragraph 175 alleged:

> From on or about November 23, 1999 through approximately spring of 2000, defendants W.R. GRACE and STRINGER led EPA employees and contractors associated with EPA's Superfund clean-up, to various locations that were contaminated with tremolite asbestos, including: the "Mine Site," "Rainy Creek Road," the "Screening Plant," the "Flyway" and the "Export Plant," without disclosing the extent and nature of the contamination at these locations.

Paragraph 175 of the Superseding Indictment reads:

> From on or about November 23, 1999 through approximately spring of 2000, defendants W.R. GRACE and STRINGER led EPA employees and contractors associated with EPA's Superfund clean-up, to various locations that were contaminated with tremolite asbestos, including: the "Mine Site," "Rainy Creek Road," the "Screening Plant," the "Flyway" and the "Export Plant," thereby disturbing and causing to be disturbed asbestos-contaminated vermiculite, releasing asbestos into the air, all without disclosing the extent and hazardous nature of the asbestos contamination at these locations.

---

them. Although the acts alleged in Paragraph 175 may have resulted in prolonged endangerment, I cannot conclude that the paragraph alleges acts done in furtherance of the knowing endangerment object when the language and context of the paragraph so clearly suggest another purpose. *Grace*, 434 F.Supp.2d at 888.

4. Paragraph 181 is unchanged.

5. For instance, Paragraph 173 of the original Indictment alleged:

> On or about November 23, 1999, defendants W.R. GRACE and STRINGER told the EPA On–Scene Coordinator that Libby Mine vermiculite concentrate at the Export Plant and at the Screening Plant contained less than one percent tremolite asbestos.

Paragraph 173 of the Superseding Indictment reads:

> On or about November 23, 1999, defendants W.R. GRACE and STRINGER told the EPA On–Scene Coordinator that Libby Mine vermiculite concentrate at the Export Plant and at the Screening Plant contained less than one percent tremolite asbestos, thereby concealing the true hazardous nature of the asbestos contamination, delaying EPA's investigation and causing releases of asbestos into the air in the Libby community.

## III. Analysis

### A. Validity of the Superseding Indictment

■ The first issue here is the Defendants' contention that the Superseding Indictment contains the same defect that resulted in the dismissal of the knowing endangerment object alleged in the original, i.e. that there is no allegation of an overt act in furtherance of the knowing endangerment object within the limitations period. The Defendants argue that because the Superseding Indictment alleges no new acts, it cannot cure the defect of failing to allege an overt act within the statute of limitations, a failure fatal to that limited allegation of the Count I conspiracy. This argument misapprehends the nature of the defect in the original Indictment.

The analysis in the June 8, 2006 Order focused on the nature of the overt acts *as alleged,* and concluded that the Indictment did not allege any overt acts in furtherance of the knowing endangerment object as required. The Order did not conclude that as a matter of fact the acts described in Paragraphs 173–183 could not possibly have been acts done in furtherance of the knowing endangerment object. Such a conclusion would impermissibly encroach on the role of the jury as the trier of fact. Rather, I found that the original Indictment failed to cast the acts described in Paragraphs 173–183 as acts in furtherance of the knowing endangerment object.

That conclusion was based on the factual allegations and the context in which those allegations were presented in the Indictment. For example, in discussing Paragraph 175, the June 8 Order reads:

It is therefore possible to conclude that by bringing unknowing individuals onto the properties in question, the Defendants are alleged to have knowingly brought about a scenario whereby endangerment could occur under the government's theory. Nonetheless, under an objective reading of Paragraph 175, and taking into account the other paragraphs included under the "Obstruction of EPA's Superfund Clean–Up" subheading, it is more plausible that the acts alleged were done in furtherance of the defrauding object.

*Grace,* 434 F.Supp.2d at 888.

The Superseding Indictment, while alleging the same facts, places them in a different context, making clear the government's theory that the acts in Paragraphs 173–183 were done in part in furtherance of the knowing endangerment object. The question to be asked in resolving the Defendants' argument is this: Would the Court have dismissed the knowing endangerment object if the original Indictment had contained the allegations presented in the Superseding Indictment? The Superseding Indictment, as the overt acts are now alleged, would have survived the Defendants' first motion to dismiss the knowing endangerment object of the Count I conspiracy.[6] Because the Superseding In-

6. It is not necessary, as the Defendants suggest, for the government to allege acts done "for the purpose of endangering others." Defs.' Reply Br. at p. 7–8 n. 4. The Court's June 8, 2006 Order states, "It is true that one effect of the obstruction was to prolong the alleged ongoing risk of exposure to tremolite, but the mere fact that an act will result in continued danger does not mean the act was done with the purpose of prolonging the dan-

ger." *Grace,* 434 F.Supp.2d at 888. The Court's reference to the "purpose of prolonging the danger" is not a legal determination about the requisite mental state that must be alleged. The Clean Air Act's knowing endangerment provision requires that the defendant acted knowingly. The Defendants point out that an overt act is an act done "for the purpose of carrying out the conspiracy," citing Ninth Circuit Model Criminal Instruction

dictment is not defective on its face, the Defendants must show either that (1) the use of the language "with prejudice" bars re-prosecution or (2) the Superseding Indictment cannot relate back to the filing date of the original and is therefore time-barred under the five-year statute of limitations.

## B. Dismissal "With Prejudice"

The Defendants argue that the knowing endangerment object of the Superseding Indictment conspiracy must be dismissed because re-prosecution is barred by the Court's dismissal of the original claim "with prejudice." In support, they cite *United States v. Transfiguracion*, 442 F.3d 1222 (9th Cir.2006). In *Transfiguracion*, the district court dismissed an indictment against the defendants based on the court's conclusion that the terms of the defendants' plea agreements prohibited the government from prosecuting them for the offenses covered by the indictment. In describing the effect of the district court's dismissal, the court of appeals wrote:

> As a means of effectuating the promise that the conspiracy prosecutions could not go forward, the district court concluded that dismissal of the indictment against Transfiguracion and Dao was the proper remedy. Although this dismissal was not specified as "with prejudice," it is evident that the district court was contemplating a dismissal on the merits, which "precludes a trial on a reindictment of the same charge."

442 F.3d at 1236 (quoting *United States v. Cejas*, 817 F.2d 595, 600 (9th Cir.1987)).

8.16 (2003). Relying on this, the Defendants attempt to bootstrap the requisite mental state for knowing endangerment from knowingly to intentionally, i.e. that the Defendants acted "for the purpose of endangering others." With regard to Count I, the interplay between the conspiracy charge and the knowing en-

The Defendants' reading of the language in *Transfiguracion* is too broad. *Transfiguracion* stands for the proposition that a court does not need to use the language "with prejudice" in order to effect a dismissal on the merits. It does not say that every use of the words "with prejudice" results in a dismissal on the merits. Other cases from the Ninth Circuit show that a court's use of the language "with prejudice" does not preclude re-prosecution every time the phrase is used. In *United States v. Castiglione*, 876 F.2d 73 (9th Cir.1989), the government moved to dismiss the indictment without prejudice and informed the court that it intended to seek a superseding indictment alleging some of the same offenses as the original. *Id.* at 74. The trial court told the government that no counts of the original indictment would be dismissed without prejudice and that the case would proceed to trial on the original indictment unless a superseding indictment was filed prior to the trial date. *Id.* at 74–75. The government obtained a superseding indictment and again sought dismissal of the original without prejudice, which was denied. *Id.* The government then moved to dismiss the original with prejudice and the motion was granted. After this turn of events, the defendant moved to dismiss those charges of the superseding indictment that were alleged in the original indictment, on the ground that the dismissal of the original "with prejudice" barred re-prosecution. *Id.* at 75.

In holding that the dismissal with prejudice did not bar subsequent prosecution on

dangerment object requires that the government prove an overt act done for the purpose of releasing a hazardous pollutant with the knowledge that the release placed another person in danger of death or serious bodily injury.

the dismissed charges, the *Castiglione* court wrote:

> Although the trial judge used the words "with prejudice," he did not intend the dismissal to bar prosecution on any charges contained in the pending superseding indictment. A judge's ruling does not bar further prosecution if it does not represent a resolution in favor of the defendant on some or all of the factual elements of the offense charged.

*Id.* at 76. *See also, United States v. Apex Distributing Co.,* 270 F.2d 747 (9th Cir. 1959), in which the court stated:

> Had the statute of limitations not barred new indictments, the Government could have reindicted appellees despite the words 'with prejudice' added to these dismissal orders. If dismissal of the new indictments were then sought because of the 'with prejudice' provision, it may be assumed that the court would deny the motions. This it could do by modifying the original orders so as to delete the words 'with prejudice,' or by holding that these words were surplusage.

*Id.* at 750–751 (footnote omitted).

■ These Ninth Circuit cases show that dismissal of a criminal charge only bars re-prosecution if it represents a resolution in the defendant's favor on some or all of the factual elements of the offense charged. Where the dismissing court did not intend for its decision to resolve the allegation on the merits, further prosecution is not barred simply because of the language used in the dismissal.

■ In this case the Court's dismissal was based on a pleading defect, i.e., a failure to allege an overt act in furtherance of the knowing endangerment object of the

conspiracy within the limitations period; there was no consideration or resolution of the factual elements of the offense charged. Accordingly, the Court's use of the words "with prejudice" does not by itself prevent re-prosecution. Moreover, the Court has the power to modify its original order to remove the words "with prejudice" from the dismissal language. *See Apex,* 270 F.2d at 750–751. There is no need for such an amendment in this case, however, because the prosecution of the knowing endangerment object is time-barred by the statute of limitations.

## C.   Statute of Limitations

■ The most recent of the overt acts alleged in the Superseding Indictment's amended paragraphs are those described in Paragraph 175. There, it is alleged that Defendants Grace and Stringer led EPA officials and others onto contaminated properties "[f]rom on or about November 23, 1999 through approximately spring of 2000." The statute of limitations ran as to those overt acts in the spring of 2005, more than a year before the knowing endangerment object of the original Indictment was dismissed and the Superseding Indictment was filed.[7] When an indictment is dismissed after the limitations period has run, whether re-indictment is time-barred is governed by 18 U.S.C. § 3288, which provides:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, in the event of an appeal,

7.   Because the conspiracy statute under which the Defendants are charged does not contain its own statute of limitations, the offense is subject to the five-year statute of limitations generally applicable to non-capital federal criminal offenses. *See* 18 U.S.C. § 3282(a).

within 60 days of the date the dismissal of the indictment or information becomes final, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations. **This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.**

(Emphasis added.)

Although the plain language of § 3288 would seem to preclude re-prosecution in this case, the Ninth Circuit's interpretation of the statute in *United States v. Clawson*, 104 F.3d 250 (9th Cir.1996) complicates the question. The defendant in *Clawson* was charged with conspiracy and mail fraud for selling nonexistent insurance. The indictment charged the defendant with overt acts prior to June 10, 1988, and alleged more overt acts after he had actually withdrawn from the conspiracy on July 5, 1988. *Id.* at 251. There were no overt acts alleged in the window between June 10 and July 5 of 1988, a critical fact because the pre-June 10 acts were outside the limitations period and the post-July 5 acts could not be attributed to the defendant because of his withdrawal. *Id.* For that reason the district court dismissed the statute of limitations for failure to allege an overt act as to the defendant within the limitations period. *Id.*

The government then obtained a superseding indictment in which it alleged overt acts within the June 10–July 5 window. *Id.* The new allegations would have

fallen within the limitations period if they had been alleged in the original indictment, but instead they were contained in a superseding indictment that was filed after the statute had run as to all of the defendant's involvement in the conspiracy. *Id.* The defendant moved to dismiss the indictment, arguing that § 3288's savings provision does not extend the limitations period for indictments dismissed for failure to comply with the statute of limitations. The district court denied the motion and the defendant was convicted. *Id.*

On appeal, the Ninth Circuit discussed the purpose of § 3288, stating, " '[The] underlying concept of § 3288 is that if the defendant was indicted within time, then *approximately the same facts* may be used for the basis of any new indictment [obtained after the statute has run], if the earlier indictment runs into legal pitfalls.' " *Id.* (quoting *United States v. Charnay*, 537 F.2d 341, 354 (9th Cir.1976)). The court acknowledged the apparent applicability of the final sentence of § 3288, stating:

This new last sentence seems to exclude Clawson's reindictment from section 3288's savings provision because the district court here dismissed the conspiracy count of the original indictment *for failing to allege that one of the elements of the crime (an overt act) took place within the statute of limitations.* Clawson urges us to read the last sentence of section 3288 as barring the use of the section's savings provision whenever an indictment is dismissed because of failure to comply with the statute of limitations. But the sentence says more: It denies the government the six-month extension if an indictment is dismissed for failure to meet the statute of limitations "or some *other* reason that would bar a new prosecution." Read in its entirety, this last sentence cuts off the six-month grace period only where the defect—

whether it's a limitations problem "or some other" problem—is not capable of being cured.

104 F.3d at 252.

Based on this interpretation of § 3288, the court held that the government was entitled to a six-month grace period to reindict because the defect in the original indictment could be cured. *Id.* The court noted that the original indictment was brought within the limitations period and was dismissed on a technicality, and held that the application § 3288's six-month grace period was appropriate because the statute "merely allows the government to do what it had a right to do in the first place." *Id.* As the court put it, "Clawson was charged within the statutory period with the exact crime for which he could have been prosecuted had there not been a defect in the indictment." *Id.* The court distinguished a scenario in which "the original indictment was brought after the limitations period ran on all the alleged criminal conduct," in which case the court held re-indictment would not be possible. *Id.*

The government's reliance on *Clawson* here cannot overcome this critical distinction: The Defendants in this case, unlike the defendant in *Clawson*, were not charged within the statutory period as the law requires when an overt act is charged as part of a conspiracy. The prosecution in *Clawson* alleged overt acts within the limitations period *in the original indictment.* The conspiracy allegation in *Clawson*, while flawed in other respects, was timely. In this case, the original Indictment failed to allege an overt act in furtherance of the knowing endangerment object within the limitations period. To allow the government a six-month grace period in this case would extend the statute of limitations for the improper purpose of affording the prosecution a second opportunity to do what it failed to timely do

in the beginning. The extent of *Clawson's* holding is debatable, but it is clear that *Clawson* does not require a defendant to remain subject to an indefinite threat of prosecution, held open beyond the limitations period, while he and the court wait for the government to finish tinkering with the indictment.

My exchange with the government's counsel at oral argument on this motion leaves the impression that the prosecution continues to insist on its theory that each of the overt acts listed in the Indictment is charged as an act in furtherance of both objects of the Count I conspiracy. This is so, the government argues, because the true overarching purpose of the charged conspiracy was to make money and save money. Since both the defrauding object and the knowing endangerment object serve the ultimate purpose of increasing the company's wealth, the argument goes, all overt acts are attributable to both objects. The problem with this argument is that the Defendants are not charged with a conspiracy to make money. They are charged with a conspiracy having two unlawful objects. The law requires that as to each object the government allege an act in furtherance within the statute of limitations. *See Yates v. U.S.*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), *overruled on other grounds, Burks v. United States*, 437 U.S. 1, 2, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). This the government has failed to do with regard to the knowing endangerment object of the conspiracy charged In Count I.

Government counsel characterized the prosecution's case as a quest for justice. Justice is the primary concern of this Court as well. But there is a difference: While the prosecution views its quest for justice as the pursuit of a particular outcome, this Court is bound to uphold that conception of justice, rooted in our Consti-

tution and laws, that lies in the process. The knowing endangerment object of the Count I conspiracy is time-barred. Section 3288 cannot save it. Some may say this determination is based on a mere technicality but that would miss the point. " 'In a society devoted to the rule of law, the difference between violating or not violating a criminal statute cannot be shrugged aside as a minor detail.' " *Goldyn v. Hayes* 444 F.3d 1062, 1070 (9th Cir.2006)(Kosinski, J.)(quoting *Dretke v. Haley,* 541 U.S. 386, 399–400, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004))(Kennedy, J., dissenting). The Defendants' motion is granted.

## IV. Order

Therefore, IT IS HEREBY ORDERED that the Defendants' motion to dismiss the knowing endangerment object of Count I of the Superseding Indictment (Doc. No. 596) is GRANTED, and the knowing endangerment object is DISMISSED.